BREUCHAUD v. MUTUAL LIFE INS. CO. OF NEW YORK et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

No. 82.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SUPPORTS FOR WALLS.

The Breuchaud patent, No. 563,130, for improvements in the construction of supports for walls. relating to the construction of subbases for old walls, when excavations are made adjoining, by driving sectional tubular columns thereunder by means of hydraulic or other jacks, claims 1 and 2, which cover the method or process, were not anticipated and disclose patentable invention. Claims 3 and 4, for a completed wall having such a subbase, are void for lack of patentable novelty, in view of the prior art. Claims 1 and 2 also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 157 Fed. 844.

Alfred W. Kiddle and Frederick P. Fish, for appellants.
Henry D. Donnelly and Henry M. Turk, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The specification states that the chief object of the invention is to improve the system of underpinning a heavy structure, such as a building wall, whenever the foundation of a proposed new building is designed to extend below the foundation of the old wall, without endangering the safety of the latter or interfering with or obstructing the interior of the building or the work in hand on the new one. The invention consists, primarily, in the method of constructing a subbase or foundation for the wall of a building or other structure by arranging hydraulic or other powerful jacks in engagement with the base of the old wall, and successively driving pipe, tube. or cylinder sections perpendicularly into the earth until the columns thus formed reach bed rock or other firm substrata, then removing the jacks and filling in pressure-resisting connections between the upper ends of the columns and the base of the wall. The invention also con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sists in the combination with the old wall of suitable beams inserted into the wall, hydraulic or other jacks or devices acting against the beams, and columns arranged in line with the jacks and acted upon by the latter, so that, while the wall offers a resistance to jacks, the latter drive the columns into the earth until they reach bed rock or other firm substrata.

Figure 1 of the patent sufficiently shows the process:

Fig.1.

After determining the number of columns necessary to produce the best subbase, the patentee constructs in the outer side of the old wall a like number of horizontally arranged recesses, 2, with vertical recesses, 3. In each horizontal recess is arranged a beam or beams, 4. A hydraulic or other powerful jack is arranged vertically in one of the recesses, so that the ram of the jack bears against the beam. The jack is employed to drive the columns perpendicularly into the earth until they reach solid foundation. The columns are preferably of iron, but may be of any metal or material suitable, and each is composed of a plurality of sections, 5, 6, 7, 8, and 9, successively attached as the column is driven down. "During this order of procedure the superincumbent weight of the building wall resists the pressure of the jack and enables the latter to exert a powerful pressure in driving the column sections downward in the manner stated." After the necessary number of sections has been forced down the jack is removed, and a beam, 10, is placed upon the upper end of the column, and the recess, 3, is filled up with brickwork or other material, as at 12, to make a practically integral wall. The beams, 4 and 10, and intermediate filling, 12, constitute a pressure-resisting connection between the upper end of the column and the base of the old wall. In this way a permanent subfoundation is provided, which will firmly and safely support the old wall while excavations are being made below its original foundation. It is pointed out that two or more columns can be driven at the same time; that it is possible to employ an ordinary water or water and air jet to aid in sinking the columns; that the sections composing each column are made in the form of cylinders, pipes, or tubes, preferably circular in cross-section; and that if the earth contained in the column is removed they may be reinforced by filling them with concrete, cement, etc., but that this is not indispensable. It is further stated that the provision of the horizontally arranged beams is important, in that they render it possible for the superincumbent weight of the building to serve as a fulcrum or resistance for the jack, without any danger of cracking, splitting, or otherwise rupturing the old wall. The patentee points out that by his method the mass of temporary underpinning braces, shoring, supports, needle beams, etc., which formerly obstructed the work on the new building and often interfered with the occupancy of the adjoining building, could be dispensed with. It is manifest from the description that a permanent underpinning is built up from solid foundation to the base of the old wall, the columns being sufficient in number to secure a safe subfoundation for such wall; that in the process of building up these columns the old wall is constantly being supported by its old foundation; and that at no time is there any shifting of the weight of the superstructure from old foundation to temporary supports and back again.

The claims are:

"1. The method herein described of constructing a subbase or foundation for a building wall, or other structure, which consists in arranging a hydraulic jack in engagement with the base portion of the wall, and successively driving column sections perpendicularly into the earth until a column is formed which reaches bed rock, or other firm substrata, then removing the jack, and subsequently forming a pressure-resisting connection between the upper

end of the column and the base portion of the wall, substantially as set forth.

"2. The combination with a building wall, or other structure, of beams inserted into the wall, hydraulic jacks acting against the beams, and column sections aligned with the jacks and driven by the latter into the earth until bed rock, or other firm substrata, is reached, said wall constituting a resistance to the jacks while they are driving the column sections perpendicularly into the earth, substantially as described.

"3. The combination with a building wall, or other structure, of beams inserted into the lower portion of the wall, perpendicular columns driven into the earth under the wall, beams arranged on the upper ends of the columns, and a filling interposed between the beams on the columns and the beams inserted into the wall, substantially as described.

"4. The combination with a building wall, or other structure, having horizontally and vertically arranged recesses in its base portion, of perpendicular columns driven into the earth under the recessed portion of the wall, beams arranged on the upper ends of the columns, beams arranged in the horizontal recesses of the wall, and fillings inserted into the vertical recesses of the wall between the beams on the columns and the beams in the horizontal recesses, substantially as described."

Claim 1 is for a method or process. So, also, is claim 2, as the use of the phrase "while they are driving" indicates. Evidently it does not refer to the completed structure, because it enumerates the jacks, and, as the specification shows, they are removed before the "improved supports" are finished. Claims 3 and 4 are for the product of the process. The record is most voluminous, and if the various points raised upon the hearing were separately discussed this opinion would be unduly expanded, without contributing anything material to the body of patent law. It will be sufficient to indicate the conclusions we have reached, with some brief reference to facts or argument which induced such conclusions.

1. Claims 3 and 4 are for a building wall with its lower portion resting upon perpendicular columns driven into the earth under the wall, so that the wall is supported on "stilts" which reach down to a sufficiently firm substrata. The pressure of the wall upon the columns is distributed by beams inserted in the wall, so that individual bricks' will not crack or crush under the heavy pressure to which they would otherwise be subjected. This building wall on stilts must be considered as a unitary structure. The circumstance that the upper part of the wall (above the plane of the column tops) was first built, and afterwards—perhaps years afterwards—the stilts were built and connected with it, is not brought into these claims at all. They would be infringed by a new wall built on cylinder stilts first driven into the earth. In view of the state of the prior art, we are of the opinion that such a structure presented no patentable novelty. If the claims be construed to cover only the precise details shown in the specification and drawings with the two sets of beams, none of them long enough to reach the beam supported by any adjoining column, with the brick filling in between the two sets of beams, etc., there is nothing in the specification to show any benefit resulting from arranging the beams in that way rather than in any other well-known way to effect a distribution of pressures; nor does the evidence indicate any utility in that particular combination. Claims 3 and 4, for a completed wall and subfoundation, must be held void.

.. Defendants' counsel criticises the first two claims as uncertain, ambiguous, and indefinite. These criticisms are without merit. There is no evidence to show that there is something peculiar about the art which would make their phraseology misleading. The application of ordinary common sense to their interpretation discloses a perfectly intelligible and apparently simple method of constructing a subbase or foundation for an existing building wall. A hydraulic jack is arranged in engagement with the base portion of the wall, and by its use column sections are driven perpendicularly into the earth under the wall until a column is formed, which rests upon bed rock or other firm substrata. The wall with which the jack engages constitutes the resistance which enables the jack to force the column sections downwards. The jacks are then to be removed, and pressure-resisting connection formed between the wall and the upper ends of the columns. The second claim differs from the first claim by providing for the insertion of beams into the wall for the jacks to act against.

3. We are not impressed by the argument that these claims are solely for the "function" of a jack, and therefore not patentable. They set forth a process, part of which only is performed by a jack. Although jacks and sectional columns and the materials used are old, the combination is a legitimate one, and, if useful, novel, and involving invention, it is patentable.

4. In view of the fact that the process of the patent was used when defendants' building was being constructed, but little proof is required to show utility, and we find sufficient in the record.

5. In underpinning old walls, as the work was done generally in the prior art, there were difficulties, drawbacks, and defects which called for remedy. The practice was to supply a temporary support for the old wall, on which temporary support alone it rested for some time. While thus supported excavation was made beneath the old wall and a new foundation built up to connection with it. Thereupon the temporary supports were removed, and the burden of the old wall laid upon the new foundation. This shifting of weight off the old foundation to the temporary supports and back again to the new foundation was likely at times to cause settling and cracks in the old structure. The temporary supports found their own support, not immediately below the wall, but outside of its lines. partly in the area on which the new building was to be erected, thus obstructing work on hand partly within the premises of the adjoining building, interfering with its occupancy and use. These difficulties called for remedy. Much is made in argument of the advent of the lofty skyscraper as being the inducing cause of a change of method; but there were buildings, before the skyscrapers, with foundations going to a considerable depth below those of the buildings adjoining them. Any one who has dwelt in a large and growing city has for years seen old walls which had to be supported by underpinning when new work was being done alongside of them; and this court will take judicial notice of the fact that years ago the Legislature of New York passed a statute expressly to provide a way whereby, upon paying proper compensation, the constructor of the new building might enter upon the premises of his next-door neighbor and

use the same for a temporary support. There had been a sufficiently long demand for improved methods to justify a presumption of patentable invention, if the improved method disclosed by the patentee in 1896 was novel, and not naturally suggested by what others had done before that date. He uses no temporary support whatever. The old wall stands on the old foundation from the beginning to the end. Sufficient of that old foundation is removed to allow one or more of the sectional columns to be sunk, completed, and connected; and that operation is continued until the work is completed. There is no shifting of weight to a temporary support and back again. Moreover, by driving the sectional column into the earth directly under the wall by a jack engaging the base of the wall, all necessity for any substantial intrusion, either upon the area where other work is waiting to be done or upon the basement or cellar of another person's building, is dispensed with. We are entirely satisfied that the Breuchaud method was a sufficient improvement over the prior usual and general method of underpinning to entitle him to a patent therefor.

6. The next point to be considered is whether the prior art discloses, among the efforts made to remedy old defects, anything which may be considered an anticipation, or which is so close to Breuchaud's method as to deprive it of patentable novelty. None of the patents for sinking caissons, shafts, etc., for cofferdams, and tunnel shields, for excavating tunnels or for moving buildings, need be considered. It will be sufficient to refer to the several instances of underpinning which defendants present as the closest approaches to the invention of the patent. Stilt foundations, upon which new walls are to be built, may be disregarded, since we have held that claims 3 and 4 cannot be sustained.

In constructing the American Surety Building in the city of New York it was necessary to underpin the adjoining Schermerhorn Building. We have a most elaborate, and not always intelligible, description of the two methods employed for different parts of the wall. The experts are not altogether in accord in deducing from the testimony precisely what was done. But it seems that the method employed involved the use of needle beams and supports intruding on adjoining property, and that the wall was first temporarily supported, the original foundation removed, and afterward new and permanent shallow foundations built and connected to the wall. The method employed with the wall of the Strauss-Meyer building in Chicago was much the same. The contractor who did the work testifies that it necessitated the removal of the goods in the basement of the adjoining building. The method employed in underpinning the wall of the Yarmouth City Hall, as described in the Engineering and Building Record of November 15, 1890, consisted in sinking hollow cast-iron piles, not under the wall, but outside of it on each side, placing longitudinal beams on the tops of the columns, and upon these transverse beams running under the old wall and supported in part on the adjoining property. In the construction of the Cable Building in this city, to support the south wall of No. 623 Broadway, a row of piles was driven into the ground south of the wall and horizontal timbers were placed on the tops of these piles. Steel needle beams were passed through openings cut in

the wall; their south ends resting on the horizontal timbers, while their northerly ends extended entirely across the cellar of No. 623, and were inserted in openings in the lower part of the north wall of that building.

The method proposed for the underpinning of the wall of the Altgelt Building in connection with the construction of the West Chicago Street Railway tunnel is selected by defendants' expert Burr as the closest approach to that of the patent. This was merely a proposed method, set forth in detailed plans and specifications and in two papers prepared by one of the engineers who devised it. The papers were published in periodicals issued by the societies before which they were read. Upon this trial these engineers testified as to what they had intended to do in matters of detail not specified in the plans or in the papers. The work was not done; the contractor believing it to be less expensive to tear down the wall and rebuild after the tunnel was finished. Of course, the intentions of the engineers are no part of the prior art. The printed publications are the only evidence we can consider in determining what was the contribution of the Altgelt Building method to the prior art. They do not indicate that the supporting columns are to be driven down by the use of jacks, and they do show quite clearly that at one time and apparently for a considerable period the whole wall was to be supported temporarily on something other than its original foundation, while brick arches were being turned between the caps of the new columns.

We are of the opinion that the record does not disclose a prior state of the art which will negative the patentable novelty of Breuchaud's method, which in its entirety seems never to have been used before.

7. As to infringement: Claims 1 and 2 both call for "hydraulic jacks," but the specifications refer repeatedly to "hydraulic or other jacks." We think the claim covers as a fair equivalent jacks, other than hydraulic, which were well known at the time. The claims refer only to columns composed of the column sections; but in view of the statement in the specifications that, "if the earth within the tubular columns is removed, these columns may be reinforced by filling them with concrete, cement, masonry. or other filling material," infringement is not avoided by thus filling them. The claims refer to the jacks as the means by which the column sections are to be driven. But the patentee states that:

"It is possible to employ an ordinary water or water and air jet to aid in sinking the columns, as is usually practiced in sinking cylindrical bodies, as, for instance, in sinking caissons in preparing foundations for bridges, piers, and the like."

Infringement would not be avoided by using such or similar means to aid the action of the jacks. The claims state that the column sections are to be "driven into the earth"; but in our opinion infringement cannot be avoided by removing the earth at the base of the column as it descends, so long as the jacks bearing against the old wall do the actual work of driving downwards. The first claim makes no mention of beams. It provides for an engagement of the jack with the base of the wall. But beams were so universally used at the time to distrib-

ute pressures that infringement would not be avoided by the use of a beam between the wall base and the jacks.

The work of constructing the Mutual Life Building, including the work of underpinning the walls of adjoining buildings, was done by an independent contractor, the defendant McMullen. There is nothing to show that he was not left free to choose any method of underpinning which suited him. Under these circumstances, the insurance company cannot be held to be an infringer of the process claims. The court below held that it did not infringe claim 1, but did infringe claim 2; but, as has been indicated, both claims are for the method or process.

As to the defendant McMullen infringement is charged as to four different walls. Under the construction of the first two claims which has been indicated above, the work done on the walls of 16 Liberty street and of 59 Cedar street was manifestly an infringement. In the case of the walls at 32 Liberty street and 49 Cedar street horizontal beams long enough to extend over the space to be occupied by several columns were inserted in recesses formed in the wall and bolted in place as an additional security; but we are of the opinion that this circumstance does not avoid infringement. Three of the columns, however, at 49 Cedar street, Nos. 9, 11, and 17, were not driven by jacks operating in engagement with the base wall, and complainant concedes that the work done on them was not an infringement.

The decree is reversed, with costs of this appeal to the Mutual Life Insurance Company, and cause remanded to the Circuit Court, with instructions to dismiss the bill, with costs as to that company, and to decree against defendant McMullen for infringement of claims 1 and 2 only, but without costs.